*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0227p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

MAME MBENGUE SENE,

*Petitioner,*

*v.*

Nos. 04-3794/4115

ALBERTO GONZALES, Attorney General,

*Respondent.*

---

Filed: July 6, 2006

Before: SILER and CLAY, Circuit Judges; and CARR, Chief District Judge.[*]

---

## ORDER

---

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the cases. Accordingly, the petition is denied.

---

[*]The Honorable James G. Carr, Chief United States District Judge for the Northern District of Ohio, sitting by designation.

CLAY, Circuit Judge, with whom MARTIN, DAUGHTREY, MOORE and COLE, Circuit Judges, join, dissenting from the denial of rehearing en banc. Mame Sene petitions this Court for rehearing of a panel decision denying her relief from an order of removal that was entered in violation of the Due Process Clause of the Fifth Amendment. Because the panel's decision mischaracterizes both the law and facts applicable to Petitioner's case, thereby working a miscarriage of justice *and* creating significant, erroneous precedent, I would grant the petition for en banc review. Accordingly, I dissent from the denial of rehearing en banc.

## I.

Petitioner is a refugee from Senegal, who seeks asylum from documented persecution. Senegalese soldiers abducted and gang-raped Petitioner after learning that she was a member of the Diola ethnic group. Thereafter, they mutilated her genitalia, excising her clitoris, labia minora, and parts of her labia majora, and imprisoned her for 6 months. *See Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2005) (holding that female genital mutilation constitutes persecution). Both a medical doctor and a psychologist from NYU's torture center have confirmed Petitioner's experience, stating, among other things, that Petitioner's "physical exam reveals the absence of the clitoris and prepuce, total excision of the labia minora, and partial excision of the labia m[a]jora," (J.A. at 93), and that Petitioner "displays significant symptoms associated with Depression and Post-Traumatic Stress Disorder. These findings are consistent with the severe physical and emotional trauma that she reports experiencing in the past," (J.A. at 109). Notably, Petitioner's mother, who was also kidnaped and imprisoned by Senegalese soldiers, was granted asylum.

Nonetheless, an immigration judge ("IJ") denied Petitioner's application for asylum because, due to ineffective assistance of counsel, Petitioner failed to submit corroborating evidence of her persecution at her merits hearing. Following the IJ's advice, Petitioner obtained documentation and moved to reopen her case. The Board of Immigration Appeals ("BIA") denied Petitioner's motion to reopen, however, because Petitioner, filing *pro se*, after her counsel unexpectedly withdrew, failed to allege ineffective assistance of counsel in her motion. Consequently, the BIA determined that Petitioner's corroborating evidence was not previously unavailable within the meaning of 8 C.F.R. § 1003.2(c)(1), and therefore, not a basis for reopening her application. After obtaining her current counsel, Petitioner filed a second motion to reopen, in which she alleged ineffective assistance of counsel. The BIA denied Petitioner's second motion, finding that the so-called "number-bar" contained in 8 C.F.R. § 1003.2(c)(2) precluded Petitioner from filing a second motion to reopen. Petitioner thereafter appealed the BIA's denial of both motions to reopen.

A panel of this Court denied the petition for review, holding that the BIA did not abuse its discretion in denying Petitioner's second motion to reopen because Petitioner had failed to establish ineffective assistance of counsel. The panel concluded that Petitioner had not established ineffective assistance of counsel because Petitioner's failure to submit corroborating evidence could not be attributed to her attorney's conduct. The panel reasoned that Petitioner's attorney urged her to obtain medical documentation and even scheduled a doctor's appointment for Petitioner. The panel completely failed to recognize, however, that Petitioner's attorney did so *only after the IJ had already denied Petitioner's asylum application*. Inasmuch as new evidence is not admissible on appeal or on a motion to reopen, counsel's failure to so advise Petitioner *before* the merits hearing did cause Petitioner prejudice by effectively denying her the opportunity to fairly present her case. Furthermore, neither the previously unavailable evidence rule nor the number-bar may be used to deny Petitioner this opportunity because Petitioner's right to present her case arises from the Fifth Amendment to the United States Constitution and no administrative regulation may be applied inconsistently with the Constitution. Consequently, the panel decision is contrary to law and should be reversed.

Although unpublished, the panel decision creates significant, erroneous and pernicious precedent. The majority's holding that Petitioner did not receive ineffective assistance of counsel despite her counsel's failure to submit medical documentation to the IJ, can and will be used in future cases to deny similarly situated petitioners relief. Although the panel glosses over the fact that Petitioner's counsel recommended submitting corroborating medical documents only after the IJ denied Petitioner's claim on the merits, my panel dissent brings this omission to light. Put succinctly, the panel's decision stands for the proposition that counsel is not responsible for failure to submit corroborating documents to an IJ, so long as counsel at some point attempts to submit such documents to the BIA. This is patently incorrect and should be reversed so as to prevent harm to future victims of ineffective assistance of counsel.

Importantly, the panel decision's pernicious precedential effect has already been demonstrated in another context by the Third Circuit's recent citation to it in a *published* case. *Luntungan v. Att'y Gen. of the United States*, 449 F.3d 551, 557 n.15 (3d Cir. 2006). The Third Circuit construed the panel opinion as casting doubt on the waivability of the number-bar, even where equity warrants waiver. *Id.* This case presents an excellent opportunity for this Court to refute the Third Circuit's interpretation of this Court's position, as well as consider this important issue of first impression.

## II.

This Court reviews the BIA's denial of a motion to reopen for abuse of discretion. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). The BIA necessarily abuses its discretion when its denial of a motion to reopen deprives a petitioner of his or her Fifth Amendment right to a full and fair opportunity to present a case. *See Daneshvar v. Ashcroft*, 355 F.3d 615, 625-26 (6th Cir. 2004) (holding that the BIA abuses its discretion in rendering a decision that is contrary to law). Whether a BIA's decision deprives a petitioner of his or her Fifth Amendment due process rights is an issue that this Court determines *de novo*. *Denko*, 351 F.3d at 726; *see also Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005); *Allabani v. Gonzales*, 402 F.3d 668, 676 (6th Cir. 2005).

## III.

In the instant case, the BIA's denial of Petitioner's second motion to reopen deprived Petitioner of her Fifth Amendment right to a full and fair opportunity to present her case. The BIA presented two grounds for denying Petitioner relief: (1) the previously unavailable evidence rule; and (2) the number-bar on motions to reopen. Inasmuch as neither rule may be used to prevent a petitioner from fully and fairly presenting her case, they do not constitute a proper basis for the BIA's decision.

**A.      Ineffective assistance of counsel prevented Petitioner from fairly presenting her case in violation of the Due Process Clause of the Fifth Amendment.**

Petitioner has received ineffective assistance of counsel in violation of the Due Process Clause of the Fifth Amendment because counsel's errors result in a proceeding that is so fundamentally unfair that Petitioner was prevented from reasonably presenting her case. *Denko*, 351 F.3d at 724. To show fundamental unfairness, a party must demonstrate that: (1) counsel erred, or competent counsel would have acted otherwise; and (2) but for counsel's errors the party would have received asylum. *Id.*

### 1.      Attorney Error

It is clear that counsel's failure to submit corroborating medical evidence constituted representation below the level of reasonably competent counsel and was an error. The BIA has stated in numerous cases that an applicant's failure to provide corroborating evidence of torture,

where reasonably available, is fatal to an asylum claim. *Matter of M-D*, 21 I. & N. Dec. 1180, 1181 (BIA 1998); *Matter of S-M-J*, 21 I. & N. Dec. 724, 725 (BIA 1997); *see also Dorosh v. Aschroft*, 398 F.3d 379, 382 (6th Cir. 2004) (upholding the BIA's rule requiring corroborating evidence). In particular, the BIA has stated that an applicant should provide documentary support for material facts which are central to [the applicant's] claim and easily subject to verification, such as . . . *documentation of medical treatment*." *Matter of S-M-J*, 21 I. & N. Dec. at 725 (emphasis added). Petitioner's counsel had an obligation to be aware of this well-known rule. Additionally, had Petitioner's attorney taken the time to speak with her, he would have realized that Petitioner was receiving medical treatment and could easily obtain a report. Thus, Petitioner's attorney erred in failing to obtain medical reports from Petitioner and submit them to the IJ.

### 2.   Prejudice

Similarly, it is clear that the failure of Petitioner's counsel to submit medical reports prejudiced Petitioner's case. According to the IJ at Petitioner's hearing, "[t]his case could be pretty simple if a doctor confirmed what she said. " (J.A. at 191.) Dr. Deborah Dyson, who Petitioner began seeing before the merits hearing, did confirm a substantial amount of what Petitioner claimed. Dr. Dyson confirmed that Petitioner's genitalia had been mutilated. "Her physical exam reveals the absence of the clitoris and prepuce, total excision of the labia minora and partial excision of the labia mojora [sic]." (J.A. at 93.) Additionally, Petitioner's psychologist, Adeyinka M. Akinsulure-Smith, wrote "in my clinical and professional opinion, [Petitioner] displays significant symptoms associated with Depression and Post-Traumatic Stress Disorder. These findings are consistent with the severe physical and emotional trauma that she reports experiencing in the past." (J.A. at 109.) Thus, it is clear that with advice from counsel, Petitioner could have prevailed on her asylum claim on the merits. *Abay*, 368 F.3d at 634 (holding that female genital mutilation is a form of persecution).

The panel attempts to undercut the force of Petitioner's evidence by relying on the IJ's statements that he believed a medical report was necessary to show that Petitioner's injuries were "crudely done" by a "completely untrained and uncaring person," thereby implying that the IJ would have denied Petitioner's asylum claim even with the medical reports, on the ground that the medical reports were insufficiently corroborative. Although I find it unlikely that the IJ would have denied Petitioner's claim, I find it important to make clear that the proper inquiry on prejudice is not whether the IJ would have denied Petitioner's claim in light of the medical reports but whether Petitioner was legally entitled to relief on her claim given the medical reports. *See Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006) ("[The petitioner] must establish that, but for the ineffective assistance of counsel, he would have been entitled to continue residing in the United States."). In this case, had the IJ denied Petitioner's claim on the merits even after considering Petitioner's medical reports, the BIA and this Court would have been legally obligated to reverse the IJ's decision. First, the IJ does not have the authority to require a petitioner to submit corroborating evidence unless such evidence is reasonably available. *See Dorosh,* 398 F.3d at 382. As Dr. Dyson's report makes clear, evidence of who mutilated Petitioner and how she was mutilated is not reasonably available because the events in question occurred too long ago. Second, the IJ is not a medical expert and does not have the knowledge or authority to assume that because there was no scarring that a surgeon, and not soldiers, mutilated Petitioner's genitalia. *See Sylla v. I.N.S.*, 388 F.3d 924, 928 (6th Cir. 2004) (holding that the IJ could not speculate on typical prison conditions in Guinea but needed to base his credibility determinations on evidence in the actual record); *see also Sulollari v. Gonzales*, No. 04-4237, 2005 WL 3275500, at *4 (6th Cir. Dec. 5, 2005) (citing *Sylla*, 388 F.3d at 928). If the IJ made an adverse credibility determination on either basis, both the BIA and this Court would be required to reverse the IJ's decision. *Sylla*, 388 F.3d at 928.

Furthermore, the panel inappropriately and offensively implies that Petitioner somehow did not suffer persecution because her genitalia healed without scarring. *Sene v. Gonzales*, Nos. 04-

3794, 04-4115, 2006 WL 994173 at *2 (6th Cir. April 14, 2006). ("Importantly, Dr. Dyson states that the 'external genitalia is totally healed without scarring.") Female genital mutilation constitutes persecution in this Circuit regardless of whether performed by a surgeon or a soldier. *See Abay v. Ashcroft*, 368 F.3d at 634. Despite the fact that Petitioner has no scars, she may never be able to engage in satisfactory sexual intercourse and is at risk for serious and potentially life threatening gynecological complications. *See id.* at 638. Excising a woman's sex organs is a form degradation that is totally unacceptable in this country or any civilized country. *See id.* at 638-39 ("The practice of FGM has been internationally recognized as a violation of women's and female children's rights. . . . Congress criminalized the practice of female genital mutilation under federal law.") (internal citations omitted). Because Petitioner has undeniably suffered a severe form of persecution and there is absolutely no evidence in the record suggesting that she consented to the persecution, Petitioner has met the burden of proving a well-founded fear of future persecution and would prevail on the merits of her asylum claim. *Id.* (holding that evidence of past persecution entitles a petitioner to a presumption of a well-founded fear of persecution and refugee status).

Nonetheless, the panel manages to conclude that Petitioner has not established ineffective assistance of counsel. While conceding that the failure to submit documents to the IJ created a "strong likelihood" of prejudice to Petitioner's case, the panel reasons that counsel did not cause this prejudice. In its efforts to support its reasoning, however, the panel is forced to obscure the facts in the record. According to the panel's version of events, counsel did not cause the prejudice Petitioner suffered because counsel recommended to Petitioner that she submit medical documents. The panel, however, misleadingly omits the fact that counsel made this recommendation *after* the IJ denied Petitioner's asylum application on the merits, stating only that counsel made the recommendation "after the IJ stressed the importance of such information." *Sene*, 2006 WL 994173 at *3. By this time, however, Petitioner had already suffered the requisite prejudice because her claim had been denied on the merits. Counsel's advice could not remedy the prejudice she suffered from the denial. A direct appeal, as the record demonstrates, is useless where Petitioner does not submit corroborating evidence to the IJ. An IJ is legally justified in rejecting a petitioner's claim where the petitioner fails to present corroborating evidence, *Dorosh*, 398 F.3d at 382, and the BIA will not consider the new evidence on appeal. *See, e.g., In re Federenko*, 19 I. & N. Dec. 57, 76 (BIA 1984) (holding that the BIA will not consider evidence not submitted to the IJ). Thus, a motion to reopen was Petitioner's only alternative and that is the motion before us today.

**B.     The previously unavailable evidence rule was an improper basis for denying Petitioner's motion.**

Because Petitioner received ineffective assistance of counsel, the previously unavailable evidence rule was an improper basis on which to deny her motion to reopen. Section 1003.2(c)(1) prohibits the BIA from granting a motion to reopen "unless it appears . . . that the evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). Where a petitioner receives ineffective assistance of counsel, such assistance is deemed to have rendered the petitioner's evidence previously unavailable within the meaning of § 1003.2(c)(1). *See Orehhova v. Gonzales*, 417 F.3d 48, 52 (1st Cir. 2005). Counsel's incompetent performance effectively results in a petitioner's inability to obtain and or present relevant evidence. Perhaps for this very reason, the BIA does not apply the previously unavailable evidence requirement of § 1003.2(c)(1) to ineffective assistance of counsel claims. *See Osei v. I.N.S.*, 305 F.3d 1205, 1208-09 (10th Cir. 2002) (noting that the BIA does not apply § 1003.2(c)(1) to motions to reopen based on ineffective assistance of counsel claims).

Moreover, reading § 1003.2(c)(1)'s previously unavailable evidence requirement to bar motions to reopen based on ineffective assistance of counsel claims would render § 1003.2(c)(1) unconstitutional. The Due Process Clause of the Fifth Amendment grants aliens the right to a full and fair hearing in deportation proceedings. *Denko*, 351 F.3d at 724. Where a petitioner is deprived

of a full and fair hearing due to ineffective assistance of counsel, the Fifth Amendment mandates that the petitioner be granted a new hearing. *Id.* Where the federal Constitution requires that a petitioner be afforded a new hearing, an administrative regulation cannot be used to deny the petitioner that hearing. Any regulation that so conflicted with the Constitution would be unconstitutional and thus unenforceable. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("Certainly all those who have framed written constitutions contemplate them as forming the fundamental and paramount law of the nation, and consequently the theory of every such government must be, that an act of the legislature, repugnant to the constitution, is void."). Consequently, the BIA's determination that Petitioner failed to present previously unavailable evidence is contrary to law and an abuse of discretion.

**C.     The number- bar was an improper basis for denying Petitioner's motion.**

Similarly, the BIA's failure to waive the number-bar as applied to Petitioner constitutes an abuse of discretion. Both the BIA and this Court have the authority to waive the number-bar on motions to reopen, *Rodrigues-Lariz v. I.N.S*, 282 F.3d 1218, 1224 (9th Cir. 2002), and must do so where application of the number-bar would deprive a petitioner of his or her Fifth Amendment due process rights. In the instant case, failure to waive the number-bar deprived Petitioner of her due process rights by effectively preventing her from presenting her application for asylum. *See Allabani*, 402 F.3d  at 676 (holding that the Fifth Amendment guarantees asylum applicants a "full and fair hearing"); *Denko*, 351 F.3d at 723 (holding that the Fifth Amendment guarantees petitioners the right to "reasonably present[]" his or her case). As discussed previously, Petitioner was deprived of a fair hearing before the IJ due to her counsel's ineffective assistance. *See supra*, Section A. Thus, the Fifth Amendment requires that Petitioner be given another opportunity to present her case.

While a petitioner's first motion to reopen would normally provide such an opportunity, in this case, Petitioner was deprived of the effective use of her first motion to reopen by yet another instance of her counsel's constitutionally ineffective assistance. *See Iturribarria v. INS*, 321 F.3d 889, 897-98 (9th Cir. 2003) (reiterating the position that an attorney's ineffective assistance of counsel is grounds for waiving number-bar). Despite promising Petitioner that he would pursue a motion to reopen on her behalf, counsel withdrew from Petitioner's representation after the end of the appeals process, leaving Petitioner to file her first motion to reopen without the assistance of an attorney. Moreover, counsel withdrew from representation without first informing Petitioner of the proper deadline for her motion to reopen, leading Petitioner to believe that she did not have time to obtain other counsel prior to filing her motion. Professional norms in both New York (where counsel resides) and Tennessee (where Petitioner resides) require attorneys to "give[] reasonable notice [of withdrawal] to the client so as to allow time for the employment of other counsel." Tennessee Rules of Professional Conduct Rule 1.16(d)(1), available at, http://www.tba.org.ethics2002.html (last visited June 26, 2006); New York Rules of Professional Conduct, DR 2-110 (B), available at, http://www.nysba.org/Content/Navigation/Menu/Attorney_Resources/Lawyers/Code_of _Professional _Responsibility/LawyersCodeofProfessionalResponsibility.pdf (last visited June 26, 2006). Accordingly, counsel's behavior clearly fell below professional standards of conduct and was in error.

Counsel's untimely withdrawal prejudiced Petitioner by causing Petitioner to "waste" her first motion to reopen. *See Rodrigues-Lariz v. I.N.S*, 282 F.3d at 1224 . If Petitioner had obtained the assistance of a trained and competent professional, to which she has a legal right, 8 U.S.C. § 1362, Petitioner would have known to allege ineffective assistance of counsel, and thus would have prevailed on the motion. The fact that Petitioner would have obtained counsel if she had been given the opportunity is evidenced by her attempt to use her former counsel for the motion to reopen and her acquisition of new counsel as soon as practicable after former counsel withdrew. That

competent counsel would have enabled Petitioner to prevail on her first motion to reopen should be fairly obvious at this point inasmuch as Petitioner's former counsel was patently ineffective for failing to present corroborating medical evidence at Petitioner's merits hearing.  *See supra*, Section A.  Consequently, Petitioner's first motion to reopen did not provide Petitioner a reasonable or fair opportunity to present her case, and the Fifth Amendment requires that she now be given such an opportunity.  *See Allabani*, 402 F.3d  at 676; *Denko*, 351 F.3d at 723.

## IV.
## CONCLUSION

The Fifth Amendment guarantees Petitioner the right to present her case.  Petitioner has not yet had  such an opportunity, and no administrative regulation should be employed in a manner that would deprive her of this opportunity.  Therefore, I would grant the petition for rehearing en banc and reverse the panel's decision denying Petitioner relief.


ENTERED BY ORDER OF THE COURT


/s/ Leonard Green
_____
Clerk