**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0456n.06

No. 09-3248

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Jul 26, 2010**

LEONARD GREEN, Clerk

EDMOND LUMAJ, )
)
Petitioner, )
) ON PETITION FOR REVIEW FROM
v. ) THE BOARD OF IMMIGRATION
) APPEALS
ERIC HOLDER, JR., )
)
Respondent. )

**Before: KEITH, BOGGS, and GRIFFIN, Circuit Judges.**

**PER CURIAM.**

Petitioner Edmond Lumaj ("Lumaj") seeks review of the denial of his application for asylum,

withholding of removal, and relief under the Convention Against Torture ("CAT") by the Board of

Immigration Appeals ("BIA"). He also seeks review of the BIA's finding that his application was

frivolous because it was inconsistent with his previously filed application. For the reasons set forth

below, we **DENY** Lumaj's petition for review.

I.

Edmond Lumaj is a native and citizen of Albania, who illegally entered the United States on

May 25, 2000. Lumaj seeks asylum based on his participation in the Democratic Party in Albania.

He claims that on September 14, 1998, he was beaten and imprisoned by government officials for

participating in a demonstration against the socialist government. Lumaj states that although as a

member of the compulsory military school in Albania he was ordered to quell the protest, he instead

joined the protesters. Lumaj claims that he left Albania to seek protection in the United States because he and his family faced persecution because of their participation in the Democratic Party.

On May 24, 2001, Lumaj applied for asylum. He filed his asylum petition in New York, where he was living at the time. Because he could not speak, read, or write English at the time, he relied on the work of a translator for his application. On July 19, 2001, the Immigration and Naturalization Service ("INS") served Lumaj with a Notice to Appear ("NTA") charging him with removability under INA § 237(a)(1)(A), 8 U.S.C. §1227(a)(1)(A), as a noncitizen who was not in possession of a valid visa at the time of entry into the country. Lumaj was ordered removed *in absentia* on August 10, 2001, after failing to appear for his hearing. Lumaj subsequently filed a motion to reopen. Lumaj and the government eventually entered a joint stipulation to remand the matter to the immigration court.

On June 23, 2005, Lumaj moved for a change of venue to Detroit, Michigan, which the Immigration Judge ("IJ") granted. On July 22, 2005, at an immigration hearing, Lumaj admitted the factual allegations in the NTA, conceded removability, and requested asylum, withholding of removal, and CAT protection. The IJ advised Lumaj's attorney that before the next hearing, "[e]ither there will be representation by counsel, that every question, every answer and every page of the application be completely translated to him, that he's fully aware of the contents and represents that everything there is true, accurate and complete or he must file an amendment." (A.R. at 148.) The IJ further stated that an amendment "must be in a sworn statement form and it must include an explanation as to any discrepancies between the original application and the amendment." (*Id.* at 148-49.)

On January 20, 2006, Lumaj filed an amended application for asylum with the Detroit immigration court. In his amended application, Lumaj continued to allege persecution on account of his political opinion and membership in a social group. He also alleged religious persecution. There were several changes in the amended application. His amended application omitted reference to a beating that he initially alleged he received at the hands of two masked men at his school and a leader of the Socialist Party, which he detailed in his initial application. Lumaj's amended application, like his initial one, reflected that it had been read to him in his native language before he signed it. A warning appeared above Lumaj's signature on both applications, advising him of the consequences of filing a frivolous application.

On February 1, 2007, Lumaj filed a second motion for change of venue, stating that he had relocated to Florida. The IJ denied the motion, noting that the case had been pending since 2001 and that a change of venue would cause unnecessary delay. Lumaj filed an interlocutory appeal to the BIA of the IJ's decision on March 13, 2007.

On May 2, 2007, the IJ conducted a merits hearing on Lumaj's application. The IJ recognized that Lumaj's amended application was substantially different from his initial asylum application and noted that the amended application was "designed to bring up to day [*sic*] and correct anything in [the] previous application that might be wrong." (A.R. at 181.) The IJ stated that he might ask "questions about why there are differences" between the two asylum applications. (A.R. at 182.) The IJ then advised Lumaj of the consequences of knowingly filing a frivolous asylum application.

Lumaj's testimony at the hearing was largely consistent with his amended application. However, he testified that he and his family often received threatening letters at home, warning them to stop their activities with the Democratic Party. He also testified that officials attempted to shoot his father and his father's uncle in 2001 although this incident was omitted from his amended asylum application. Lumaj admitted that certain events reported in his original application – that he was beaten by masked men and by the local chairman of the Socialist Party – never occurred. When asked about the inconsistency, he stated that his original application was not read back to him in his native language.

Lumaj's father, who had been granted asylum by an IJ in Miami, testified on Lumaj's behalf at an earlier hearing on December 2, 2004. His father's testimony was largely consistent with the amended application. Dr. Fischer testified as an expert on the country conditions in Albania. After the IJ conducted the individual merits hearing, but before he rendered his decision, the BIA denied Lumaj's petition for interlocutory review concerning the motion for a change of venue.

On July 3, 2007, the IJ issued a written decision denying Lumaj's application. The IJ noted that Lumaj was statutorily ineligible for asylum because he filed his initial asylum application one day after the one-year statute of limitations, and because he failed to establish that a statutory exception to the statute of limitations applied.[1] The IJ also found that Lumaj's application was frivolous and contained deliberately fabricated material. The IJ noted that although Lumaj reported

---

[1]The IJ found that the petition was filed one day late, but the BIA did not reach this issue and instead addressed the merits of Lumaj's claims. Consequently, the BIA did not determine whether Lumaj was nonetheless entitled to relief due to changed circumstances. *See* 8 U.S.C. §1158(a)(2)(D). We need not reach this issue because Lumaj has failed to show that he is entitled to relief.

in his first asylum application that he was beaten by two masked men at his school, he later admitted that none of this was true. He further found that Lumaj's assertion that he was unaware that the initial application contained false information was not supported by the record. The IJ noted that when Lumaj appeared for his first asylum interview, he only made one correction to the narrative statement that was submitted in support of his application. The IJ further observed that while Lumaj initially represented that he did not recall what he told the asylum officer, he eventually admitted that he may have told the officers false information.

The IJ next concluded that Lumaj failed to provide credible evidence in support of his application for withholding of removal. The IJ noted that there were a number of discrepancies in his testimony. Lumaj testified about critical events that were omitted from his amended asylum application. For example, Lumaj failed to mention the threatening letters that he and his family received, and the applications did not mention that his father and his father's uncle were shot at in 2001. The IJ further noted that although Lumaj reported that the first and only protest he participated in was on September 14, 1998, he produced a declaration from the chairman of the Anticommunist Union of Albania dated July 15, 1998, indicating that he played a very important role as the initiator of political protests. The IJ also noted that while he testified that he left school on September 14, 1998, he produced a letter from his school confirming his enrollment through November 2, 1998. The IJ further found that his father's testimony was inconsistent with the testimony in support of his own application for asylum.

Finally, the IJ concluded that even if Lumaj's testimony was credible, he failed to establish that it was more likely than not he would be persecuted or tortured upon his return to Albania, and

he was thus ineligible for withholding of removal or relief under CAT. The IJ concluded that Lumaj's two-day detention and beating in September 1998 did not amount to torture. On March 11, 2009, the BIA affirmed the IJ's decision in a separate opinion.

II.

Procedural rulings, including denial of a motion for change of venue, are reviewed for an abuse of discretion. *See Pergjoni v. Holder*, 311 F. App'x 892, 894 (6th Cir. 2009). Where, as here, the BIA adopts and affirms the decision of the immigration judge, while adding its own reasons for doing so, this Court reviews both decisions. *See Gilaj v. Gonzales*, 408 F.3d 275, 282-83 (6th Cir. 2005).

An IJ may grant a motion for change of venue upon a showing of good cause. 8 C.F.R. § 1003.20(b). Good cause is determined by balancing a number of factors, including administrative convenience, the expeditious treatment of the case, the location of the witnesses, and the costs of transporting witnesses or evidence to a new location. *See Matter of Rahman*, 20 I & N Dec. 480, 482-83 (BIA 1992). The IJ and BIA held that administrative convenience favored keeping the proceeding in Detroit. Lumaj had already been granted one change of venue, and the case had been pending for several years at the time of his second request to change venue. Moreover, although at one point Lumaj represented that his family had all moved to Florida, it was revealed during the immigration hearing that they lived in Rochester, Michigan. Given these circumstances, the denial of Lumaj's request for another change of venue was not an abuse of discretion.

III.

The determination that a petitioner has filed a frivolous application or has failed to demonstrate eligibility for asylum is reviewed under the highly deferential substantial evidence standard. *See Sterkaj v. Gonzales*, 439 F.3d 273, 278 (6th Cir. 2006). Administrative findings of fact are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

An asylum application is frivolous "if any of its material elements is deliberately fabricated." 8 C.F.R. § 1208.20. A finding of frivolousness requires: 1) notice to the noncitizen of the consequences of filing a frivolous application, 2) an indication that the noncitizen has been afforded sufficient opportunity to account for any discrepancies or implausible aspects of the claim, 3) a specific finding by the IJ or Board that the noncitizen knowingly filed a frivolous application, and 4) sufficient evidence in the record to support the finding that a material element of the asylum application was deliberately fabricated. *See Lazar v. Gonzales*, 500 F.3d 469, 475 (6th Cir. 2007). A noncitizen who "knowingly made a frivolous application for asylum . . . shall be permanently ineligible for any [immigration] benefits," with the exception of withholding of removal. *See* INA § 208(d)(6), 8 U.S.C. § 1158(d)(6). "[B]ecause of the severe consequences that flow from a frivolousness finding, the preponderance of the evidence must support an [IJ's] finding that the [petitioner] knowingly and deliberately fabricated material elements of the claim." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007) (second and third alterations in original) (internal citation omitted).

The IJ found Lumaj's asylum application frivolous because there were material inconsistencies between Lumaj's initial and amended applications for relief. Lumaj stated in his initial application that he returned to school after his arrest; his father took him to the hospital where he was determined to be in critical condition; and he was beaten by a local Socialist leader and two police officers. These incidents were omitted from his amended application, and Lumaj admitted that these incidents did not occur. These discrepancies involve alleged incidents of persecution and go to a material element of Lumaj's asylum claim. The BIA affirmed the IJ's findings, noting the discrepancies between the initial and amended applications and stated that IJ had provided adequate notice of the consequences of filing a frivolous application during the merits hearing.

The primary issue concerning the immigration courts' frivolousness finding is whether Lumaj received adequate notice of the consequences of filing a frivolous application such that his initial application can be the basis of a frivolousness finding. The other elements of a frivolous determination are easily met: the discrepancies between his two applications indicate that "a material element of the asylum application was deliberately fabricated"; the IJ and BIA made a specific finding that the application was frivolous; and the IJ afforded Lumaj an opportunity to explain the discrepancies between the two applications. The government argues that Lumaj received adequate notice of the consequences of filing a frivolous application upon filing his initial application because notice appeared in bold-face font above Lumaj's signature on his initial asylum application. Lumaj counters that he did not understand the contents of his initial application and noted that there were several errors in that application. At the time of his initial filing, Lumaj did not speak, read, or understand English.

In his order denying Lumaj relief, the IJ discredited Lumaj's claim that his initial application was not read to him and noted that Lumaj never corrected the material fabrications in his initial application during his initial interview with an immigration officer. The IJ noted that Lumaj's initial application contained handwritten amendments, which were made during his initial interview with an immigration officer. However, Lumaj made no corrections to the narrative that contained the deliberate falsehoods in his initial application. The IJ therefore concluded that Lumaj was aware of the deliberate fabrications contained in the initial application. He further found that Lumaj's testimony to the immigration officer during the initial interview was likely consistent with the narrative provided in the initial application, and therefore contained deliberate fabrications. Because administrative findings of fact are conclusive "unless any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. 1252(b)(4)(B), the immigration courts' holding concerning Lumaj's testimony on the initial application is upheld. This evidence supports a finding that Lumaj was aware of the contents of his initial application, including the notice of the consequences of filing a frivolous asylum application.

During the merits immigration hearing, the IJ stated that he would primarily be relying on Lumaj's amended application, but he would question Lumaj about his initial application. Specifically, he stated: "It is this application, the one that you filed here that I'm going to have you sign under oath, I note it is substantially different than the one you filed administratively. And to the extent it is different I'll only go by this one you filed in Detroit. *You may however be asked questions about why there are differences*." (A.R. at 181-82 (emphasis added).) The IJ then gave

Lumaj notice of the implications of filing a frivolous application for asylum and stated that Lumaj

would have to explain discrepancies between the two applications.

Accordingly, there is substantial evidence to support a finding that Lumaj received adequate

notice of the consequences of filing a frivolous application, and he knowingly made deliberate and

material fabrications to his initial asylum application. We note, however, if there is evidence that

a petitioner provided inaccurate information due to unknown translation errors, that matter could be

resolved differently and might not involve a knowing fabrication worthy of a frivolousness finding.

IV.

A frivolousness findings does not prohibit a noncitizen from seeking withholding of removal.

8 C.F.R. § 1208.20. To qualify for withholding of removal, the noncitizen must demonstrate a "clear

probability of persecution" establishing that it is "more likely than not that [he] would be subject to

persecution if forced to return to his native land." *Gumbol v. INS*, 815 F.2d 406, 411 (6th Cir. 1987)

(citations omitted) (alternation in original). The immigration courts denied Lumaj's application for

withholding of removal because they found his testimony incredible. An adverse credibility finding

is reviewed for substantial evidence. *See Yu v. Ashcroft*, 364 F.3d 700, 703 (6th Cir. 2004). An

adverse credibility finding "must be supported by specific reasons" and "must be based on issues that

go to the heart of the applicant's claim."[2] *Liti v. Gonzales*, 411 F.3d 631, 637 (6th Cir. 2005)

(internal quotation and citation omitted).

---

[2]Because this application was made before May 11, 2005, the effective date of the Real ID Act, this standard rather than the stricter standard in the Real ID Act is applicable. *See Kaba v. Mukasey*, 546 F.3d 741, 749 n.1 (6th Cir. 2008).

The BIA found that there were significant omissions and testimonial discrepancies with the documentary evidence that went to the heart of the petitioner's asylum application. In making an adverse credibility finding, the IJ noted that Lumaj testified that his father and his uncle were shot at, and that his uncle was killed as a result of the shooting. This information was omitted from Lumaj's amended asylum application. This was a significant omission given the gravity of the conduct alleged, and his failure to mention this incident in his application was an adequate basis for finding that his testimony was not credible. Also, his father's testimony appeared to be inconsistent with the testimony that his father presented for his own asylum application.

These inconsistences, taken together, were enough to support an adverse credibility finding, and the record does not compel a finding that Lumaj was credible. Accordingly, the BIA's denial of his application for withholding of removal was not improper. Lumaj has also failed to demonstrate that he is entitled to relief under CAT because he is unable to show that he is likely to suffer from torture upon return to Albania.

Lumaj also argues that his due process rights were violated because the government deliberately withheld evidence from him and improperly relied on the notes of an immigration officer who was not present to testify. Legal questions determined by the BIA, including due process claims, are reviewed *de novo*. *See Sene v. Gonzales*, 453 F.3d 383, 385 (6th Cir. 2006) (internal citations omitted). In order to prevail on his due process claims, Lumaj must show that there was "a defect in [the] deportation proceedings [that] constituted fundamental unfairness." *Elia v. Gonzales*, 431 F.3d 268, 275 (6th Cir. 2005) (citing *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). Lumaj points to minor disputes with opposing counsel, which did not substantially

affect the proceedings and that are insufficient to support an argument that his due process rights

were violated.

V.

For the foregoing reasons, the petition for review is **DENIED**.