File Name: 06a0807n.06

Filed: November 2, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 05-4550

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

VICENTE BRICENO DORADO,

    Petitioner,

v.                                                                              ON APPEAL FROM THE
                                                                              BOARD OF IMMIGRATION
ALBERTO GONZALES,                                      APPEALS

    Respondent.

_____/

Before:       MARTIN and COOK, Circuit Judges; BERTELSMAN, District Judge.*

       BOYCE F. MARTIN, JR., Circuit Judge. Vincente Briceno Dorado, a native and citizen of Mexico, appeals a judgment from the Board of Immigration Appeals denying his application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b). In affirming the immigration judge's decision, the Board found that Briceno did not qualify for "exceptional and extremely unusual hardship" under the statute. For the reasons discussed below, we **AFFIRM** the decision of the Board.

I

---

*The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

Briceno entered the United States without inspection in July 1989. He was involved in a relationship with a woman named Elena Bonilla, a citizen of Nicaragua, with whom he had two sons: Nestor Vincente Briceno (born October 19, 1992), and Luis Alexis Briceno (born September 28, 1995). A third son of Bonilla, Jesus Charles Sanchez (born November 26, 1990), also lives in Briceno's household and Briceno testified that "I consider him my son." But Briceno also admitted that Jesus is not his biological son, nor has he adopted Jesus. The three boys are United States citizens. Ms. Bonilla has filed an application for asylum as well as an application for benefits under the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), Pub. L. No. 105-100, Title II, 111 Stat. 2193 (1997). She is apparently physically unable to work, and thus Briceno is and has been the sole wage-earner for the household.

Removal proceedings were initiated against Briceno on January 24, 2002, in San Francisco, California. Briceno conceded removability based on his prior entry without inspection, and requested relief in the form of cancellation of removal under INA § 240A(b) or, in the alternative, voluntary departure under INA § 240B. On November 10, 2003, Briceno requested a change in venue because he had moved to Knoxville, Tennessee. This request was granted, and his cancellation of removal hearing was considered by an immigration judge in Memphis on August 17, 2004. Briceno was represented by counsel at this hearing.

The immigration judge found that Briceno met the 10-year "physical presence" required under INA § 240A(b). However, the judge found that Briceno had not met the statute's "good moral character" requirement. Briceno was only able to produce tax returns from four of the ten years he had been living in the United States, was unable to offer a sound explanation for his failure to pay

certain back taxes under a 1996 agreement with the Internal Revenue Service, and had represented himself as being married on several years' tax returns, even though he testified that he had never been married. The judge also found that Briceno had not demonstrated the requisite "exceptional and extremely unusual hardship" required under INA § 240A(b). At his hearing, Briceno advanced three witnesses whom he alleged could speak to the hardship issue beyond that to which Briceno himself had testified: his elder son, Nestor; his self-declared son, Jesus; and Cindy Mire, a woman who attended the same church as Briceno and his sons. The immigration judge refused to hear testimony from Jesus, because he was not Briceno's son; and he refused to hear testimony from Ms. Mire, because she was not a member of Briceno's family. The judge did, however, hear testimony from Nestor. In making his hardship determination, the judge only considered hardship as to Briceno's two biological sons, Nestor and Luis. Important factors in the judge's decision were that neither boy had physical or emotional problems, that there was no evidence Briceno could not work in Mexico and send them money should they need it, and that Ms. Bonilla was an asylum and NACARA applicant and thus unlikely to be separated from her children due to her own removal. Briceno was ultimately granted voluntary departure, but no more.

In his appeal to the Board of Immigration Appeals, Briceno submitted additional evidence from a clinical psychologist who had interviewed Nestor, Luis, and Jesus. The psychologist concluded that if the children were forced to live in Mexico due to Briceno's removal, "they will all likely develop a reactive depression." The psychologist further concluded that the impact of Briceno's removal on all three children would be "devastating." In a per curiam opinion dated November 17, 2005, the Board affirmed the decision of the immigration judge:

> The Mexican respondent did not meet his burden of proof for cancellation of removal because he did not show his removal would result in exceptional and extremely unusual hardship to his two United States children, who are his only qualifying relatives under the cancellation law. We need not and do not reach the Immigration Judge's alternate grounds for denying such relief. The respondent's failure to meet the statutory hardship requirement disqualifies him for cancellation of removal, regardless of whether he meets the additional requirements for such relief.
>
> The respondent claims on appeal that the Immigration Judge unfairly truncated the hearing despite the presence of additional witnesses, but he waived this argument by failing to object at the hearing. Contrary to the respondent's allegations, we find the Immigration Judge's conduct of the hearing was well within proper judicial bounds. The respondent received a fair hearing and was accorded procedural due process. On appeal, he has submitted a psychologist's report. As an appellate body, this Board generally considers the record as it existed before the Immigration Judge. Even if we were to consider the proffered report, it would not alter the result in this case.

Briceno appeals the decision of the Board on the following two grounds: (1) that his due process rights were violated by the immigration judge's refusal to accept "hardship" testimony from Jesus Sanchez; and (2) that his due process rights were violated by the Board's failure to remand to the immigration judge for further proceedings in light of new evidence proffered by Briceno regarding the negative psychological effect his departure would have on Nestor, Luis, and Jesus.

II

This Court lacks jurisdiction to review denials of discretionary relief by an immigration judge, including denial of an application for cancellation of removal. INA § 242(a)(2)(B)(i); *see also Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703 (6th Cir. 2005); *Valenzuela Alcantar v. INS*, 309 F.3d 946, 950 (6th Cir. 2002) (holding that "the immigration judge's determination of the 'extreme hardship' issue is not subject to judicial review"). However, in cases in which colorable constitutional claims and questions of law are raised regarding the removal proceedings, this Court

does have jurisdiction: "Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001).

In removal proceedings, while an alien is entitled to "a reasonable opportunity . . . to present evidence on the alien's own behalf," INA § 240(b)(4)(B), evidentiary matters are not subject to the Federal Rules of Evidence and thus this Court "review[s] evidentiary rulings by IJs only to determine whether such rulings have resulted in a violation of due process." *Singh v. Ashcroft*, 398 F.3d 396, 407 (6th Cir. 2005). This Court reviews alleged due process violations in removal hearings de novo. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005). A violation of due process occurs when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id*. at 436 (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)).

III

**A. The IJ's Refusal to Accept "Hardship" Testimony from Jesus Sanchez**

The immigration judge refused to hear testimony from Jesus Sanchez, a boy who had lived with Briceno for much of his life and was "considered" by Briceno to be his son, although he was not legally recognized as such through blood or adoption. Briceno's argument is that Jesus, as the oldest of the three boys in his household, would have been best able to articulate the hardship that he and his "brothers" would suffer were Briceno removed to Mexico. This is an evidentiary question, and as such is governed largely by this Court's precedent in *Hassan*, where we noted that the immigration judge "is afforded broad discretion to control the manner of interrogation in order to ascertain the truth." *Hassan*, 403 F.3d at 436 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 391

(6th Cir. 1998)). The immigration judge's evidentiary discretion cannot be so unbridled, however, as to upset his role as "neutral fact-finder interested in hearing petitioner's evidence," and thus violate a petitioner's due process rights. *Id*.

INA § 240A(b), which supplies the statutory language for cancellation of removal, states in relevant part:

> The Attorney General **may** cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien--
>
> > (A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> > (B) has been a person of good moral character during such period;
> > (C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); **and**
> > (D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

INA § 240A(b)(1) (emphasis added). The immigration judge found that Briceno met parts (A) and (C) of the statute, but not parts (B) and (D). Part (D), which contains the requirement of "extremely unusual hardship," was considered by the Board to be determinative, and thus the procedures followed by the immigration judge in assessing part (D) are the focus of Briceno's appeal. The extremely-unusual-hardship requirement applies by its own terms only to a "child" of the alien who is also a citizen of the United States or lawful permanent resident. Because the term "child" is not self-defining, one must then turn to its statutory definition within the INA. *See* INA § 101(b)(1), 8 U.S.C. § 1101(b)(1). This definition does not include a non-biological, non-adopted boy such as

Jesus, and Briceno concedes as much. The question was addressed by the Supreme Court in *INS v. Hector*, 479 U.S. 88 (1986), a case dealing with "suspension of deportation," the precursor to the INA's current "cancellation of removal" nomenclature. In *Hector*, the Court held that "even if [petitioner's] relationship with her nieces closely resembles a parent-child relationship, we are constrained to hold that Congress, through the plain language of the statute, precluded this functional approach to defining the term 'child.'" *Id*. at 382; *see also Fiallo v. Bell*, 430 U.S. 787, 798 (1977) (noting that "it could be argued that the line should have been drawn at a different point and that the statutory definitions deny preferential status to [some] who share strong family ties," but "these are policy questions entrusted exclusively to the political branches of our Government, and we have no judicial authority to substitute our political judgment for that of the Congress").

In his brief, Briceno attempts to undercut *Hector* by construing the Board's ruling in *Matter of Recinas*, 23 I. & N. Dec. 467 (BIA 2002), to stand for the proposition that an immigration judge must evaluate the effect of removal on the "family unit" as a whole. Petitioner's Br. at 21. In *Recinas*, the Board granted a woman's application for cancellation of removal on grounds that she was the single mother of six children — four of whom were U.S. citizens — and, unlike Briceno, had no family to return to in Mexico. 23 I.. & N. at 471. Briceno argues that once the Board promulgated its rule in *Recinas* "that evidence concerning how hardship within the *family unit as a whole* will affect the qualifying relatives must be considered, the BIA and the immigration courts became *compelled* to accept it when proffered." Petitioner's Br. at 23 (emphasis added). This would be a viable argument but for the fact that no such rule is to be found in *Recinas*. Nowhere in *Recinas* is the term "family unit" used. Where the term "family" is used, it is typically meant to refer to those

family members that the immigration judge (and the Board) may consider in determining hardship, specifically, the alien's "spouse," "parents," and "children" as defined under the INA, assuming they are United States citizens or lawful permanent residents. All ancillary hardship inquiries flow from this initial determination. *See, e.g.*, 23 I. & N. at 472 ("In considering the hardship that the *United States citizen children* would face in Mexico, we must also consider the totality of the burden on the entire family that would result when a single mother must support a family of this size.") (emphasis added).

To be sure, the INA's definition of "child" may be far out of step with the times, and may have a particularly deleterious effect on aliens whose culture's definition of "family" is legitimately broader than the traditional definition of those related by blood or adoption. This does not mean, however, that the immigration judge in the instant case violated Briceno's due process rights. The judge could have allowed Jesus to testify, but following *Hector*, he chose not to, and this was well within his discretion for a cancellation of removal proceeding. The judge did, after all, hear extensive hardship testimony from Briceno's biological son Nestor. Furthermore, in light of Nestor's testimony, as well as that of Briceno himself, it was reasonable for the immigration judge to conclude that he had enough information to make a hardship determination without hearing from Jesus. Jesus's hardship testimony would have been cumulative, and thus its exclusion would likely not have presented a due process problem even had the immigration judge been *required* to admit it under *Hector*.

It cannot be said that Briceno's proceeding was "so fundamentally unfair that [he] was prevented from reasonably presenting his case." *Hassan*, 403 F.3d at 436. Briceno's due process claim as to Jesus's excluded testimony thus fails.

## B. The BIA's Refusal to Remand to the IJ in Light of New Psychological Evidence

Briceno was entitled to present psychological evidence at his removal hearing to further his case for exceptional and extremely unusual hardship under INA § 240A(b)(1)(D). *See* 8 C.F.R. § 1240.58(b)(9). As such, the fault does not lie with the Board for not considering this evidence on appeal. Rather, in light of the new psychological evidence, Briceno could have submitted a motion to reopen under 8 C.F.R. § 1003.2(c). This motion would likely have been denied, however, because the Board is prohibited from granting a motion to reopen "unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). There is nothing in the record to indicate that Briceno could not, with or without the assistance of counsel, have obtained the psychologist's report in time for the cancellation-of-removal hearing. Briceno is therefore barred from relying on what he alleges to be the Board's failure to consider the report. *See also INS v. Abudu*, 485 U.S. 94, 108 (1988) ("If INS discretion is to mean anything, it must be that the INS has some latitude in deciding when to reopen a case. The INS should have the right to be restrictive. Granting [motions to reopen] too freely will permit endless delay of deportation by aliens creative and fertile enough to continuously produce new and material facts sufficient to establish a prima facie case."). At best, Briceno might be able to assert that his counsel was ineffective for not having the psychological report prepared in time for the hearing. But this has no bearing on Briceno's due

process claim with respect to the Board of Immigration Appeals. The due process claim simply has

no merit.

III

For the foregoing reasons, Briceno's due process arguments must fail, and we therefore

**AFFIRM** the decision of the Board of Immigration Appeals.