**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 09a0409n.06

No. 08-3038

**FILED**

**Jun 09, 2009**

LEONARD GREEN, Clerk

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

AICHAI HU,

    Petitioner,

v.

ERIC H. HOLDER, JR., United
States Attorney General,

    Respondent.

**ON PETITION** FOR
REVIEW OF AN ORDER
OF THE BOARD OF
IMMIGRATION APPEALS

---

**Before:**    **MARTIN and KETHLEDGE, Circuit Judges; and WATSON, District Judge.**[*]

    **WATSON, District Judge.**  Aichai Hu seeks review of the Board of Immigration Appeals' ("BIA") decision which dismissed her appeal of the Immigration Judge's ("IJ") denial of her application for cancellation of removal under section 240A(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b). The BIA affirmed the IJ's determination that Hu failed to prove that her removal to China would result in exceptional and extremely unusual hardship to her son. Hu argues, *inter alia*, that the IJ violated her right

---

[*]The Honorable Michael H. Watson, United States District Judge for the Southern District of Ohio, sitting by designation.

to due process when he abandoned his role as a neutral decision maker. We disagree and therefore **AFFIRM** the BIA's decision.

## I. BACKGROUND

Hu is a native and citizen of the People's Republic of China. (JA 45). When Hu was almost fourteen years old, she left China and moved to Suriname to live with her family. (JA 118-19). On August 9, 1995, Hu entered the United States as a non-immigrant student to attend school in Starkville, Mississippi. (JA 118, 179). She has remained in the United States since that time. (JA 131). Hu married a Chinese citizen in January 1997. (JA 47, 120). Hu gave birth to a son, Jason, on July 23, 1997. (JA 47, 148). Hu, her husband, and Jason eventually settled in an apartment in Tupelo, Mississippi. (JA 121). Hu and her husband worked at a nearby Chinese restaurant called The Gold Star. (JA 52, 129, 143).

On December 15, 2005, the U.S. Immigration and Customs Enforcement ("ICE") served Hu a Notice to Appear in which the ICE alleged that Hu was subject to removal for failure to attend school from 1996 to present. (JA 179-80). On January 31, 2006, Hu appeared before an IJ in Memphis, Tennessee and conceded removability. (JA 78). She then informed the IJ that she intended to seek cancellation of removal. (JA 78).

The IJ conducted the hearing on Hu's application on July 27, 2006. (JA 90). At the beginning of the hearing, Hu signed her application for cancellation of removal after

swearing to the truth of its contents. (JA 91). The application indicated that she had $2500 of her own, and a total of $6000 jointly with her husband. (JA 150-51).

Hu sought cancellation of removal on the basis of hardship to her son, Jason. Jason, who was nine years old at the time, testified at the hearing. (JA 92-115). Jason testified that he was born in Tupelo, and that he attended fourth grade, where he received As and Bs for grades. (JA 94-95). He indicated that he swam, played basketball, and rode his bicycle. (JA 96). He said his mother helped him with his homework and took him to the library, where he would check out as many as twenty-five books. (JA 96-97). When asked whether he could speak Chinese well, Jason responded, "Not really." (JA 99-100, 115). Jason indicated that he could not read or write Chinese. (JA 100, 115). On three occasions, the IJ admonished Hu not to signal to Jason while he was testifying or otherwise interrupt his testimony (JA 92, 102, 105).

Hu also testified at the hearing. She averred that her parents had a chicken farm in Suriname. (JA 119). The IJ asked Hu whether her parents were rich or doing well. (JA 119). Hu responded, "No. They will just, you know, making a living." (JA 119). Hu expressed the opinion that she could not return to Suriname, although she had not contacted the Suriname embassy or consulate to confirm her belief. (JA 120, 138-39).

Hu further testified that when Jason was three or four years old, he traveled to China to visit his father's parents. (JA 120, 136). She indicated that her husband's parents speak

the Foo Chow dialect, which she does not speak. (JA 136). Hu said, "We barely communicate." (JA 137).

Hu indicated that her husband was in jail because he was sentenced to deportation. (JA 121). Hu's husband had filed an application for asylum, but the application had been denied. (JA 159-60, 163-64). Hu also testified that her lawyer informed her that if her husband was sent back to China, he would be eligible for a waiver to return to the United States. (JA 130). Hu's attorney made a similar representation directly to the IJ. (JA 134-35).

Hu said that she used to attend church, but had not done so since her husband was in jail because she had to work six or seven days a week and take care of Jason. (JA 126, 146). Hu testified that Jason spoke English and "very very limited" Chinese. (JA 126). She confirmed that Jason could not read or write Chinese. (JA 130). Hu said that a woman named "Annie" lived with her and Jason. (JA 133).

Hu indicated that she had an uncle who was a U.S. citizen who lived in Starkville, Mississippi. (JA 149). She testified that she had not had contact with her uncle in a long time, and that she did not trust him. (JA 149).

Hu also testified that she and her husband had $110,000 in cash in a joint savings account. (JA 151-57). In response to this revelation, the IJ uttered, "$110,000. Remarkable." (JA 152). Hu had failed to disclose this sum in her application for cancellation of removal, which required her to list all of her assets. (JA 154). Hu said her

mother sent her the money. (JA 152-53). The IJ asked in response, "From her badly running chicken farm?" (JA 153). Hu answered that her mother used to own a supermarket and then sold it. (JA 153). Hu testified that her mother intended Hu to use the money to "set up a business or something like that." (JA 153). Hu said that she wanted to use the money to buy a house. (JA 155). Later she testified that the money was not for her to use for herself, but was to be used for her child. (JA 158). Hu also indicated that she owned three cars. (JA 150).

When asked whether Jason would be able to continue his education in China, Hu responded, "How can he go to school there, since he does not read or write Chinese? He cannot even communicate with other children there." (JA 130).

The IJ asked Hu where she would expect to settle in China. (JA 158). After Hu gave a non-responsive answer, the IJ stated, "Ma'am, I want you to face reality and start [answering] my questions straight." (JA 158).

Following Hu's testimony, the IJ stated, "And again, I'm concerned, obviously, I'm very concerned about the reception that this United States citizen would receive, but I need to know more about that. That is my, that has to be my focus, is on the purported hardship to him." (JA 165-66). The IJ then *sua sponte* entered into the record the June 2004 edition of the Profile of Asylum Claims and Country Conditions for China. (JA 166-67).

In his oral decision, the IJ found that Hu had failed to establish exceptional and extremely unusual hardship to her son. (JA 53). The IJ observed:

> The case hinges in this as it always must on the hardship to the child. Jason testified in Mississippi-accented English, and he describes through this testimony and the testimony of his mother a young man who is somewhat acclimated to the United States mores and practices, but who spends most of his time in the front of a Chinese restaurant in Tupelo, Mississippi. While he and his mother communicate in English, and everyone says that he is not able to speak Chinese, the Court senses given the social isolation of the respondent, herself, that Jason may be able to communicate in Chinese better than we have heard.

(JA 53-54). The IJ noted that Jason would not likely qualify for free public education in China. (JA 55). He indicated he might have considered the hardship more profound if Hu's assets were limited to the $6000 disclosed in her application. (JA 55). He reasoned, however, that "$110,000 in cash would certainly assist Jason in attending private school in China." (JA 55-56). The IJ denied Hu's application for cancellation of removal, and ordered Hu to be removed to China. (JA 58).

Hu appealed the IJ's decision to the BIA. The BIA dismissed Hu's appeal and issued its final order of removal on December 31, 2007. Hu timely filed her petition for review of the BIA's order on January 11, 2008.

## II. ANALYSIS

The requirements for cancellation of removal are set forth in INA § 240A(b)(1), which provides:

The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is deportable from the United States if the alien–

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;

(B) has been a person of good moral character during such period;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). Here, the first three statutory requirements were not contested. Thus, the IJ's decision turned on whether Hu demonstrated the requisite hardship to her son under INA § 240A(b)(1)(D), 8 U.S.C. § 1229b(b)(1)(D).

Hu argues that the IJ violated her right to due process by failing to consider her son's inability to read or write the Chinese language. Hu contends the IJ abandoned his role as a neutral decision maker when he learned that Hu had $110,000 in a savings account that was not reported in her application for cancellation of removal. Hu maintains that the IJ's comments during the proceeding and in his oral decision demonstrate his bias against her.

The Government's advances three grounds for the denial of Hu's petition for review. First, the Government asserts that Hu's failure to exhaust her purported constitutional claim before the BIA precludes our exercise of jurisdiction. Second, the Government contends that

this Court lacks jurisdiction because Hu's allegations do not establish a colorable constitutional claim, but rather constitute a challenge to the IJ's discretionary weighing of the evidence, which is not reviewable. Third, the Government argues Hu's due process claim fails on the merits.

We review *de novo* questions of subject matter jurisdiction. *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 630 (6th Cir. 2006). The *de novo* standard of review also applies to alleged denials of due process in removal proceedings. *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007).

The Government first argues that the Court lacks jurisdiction to review the IJ's decision because Hu failed to exhaust her administrative remedies by presenting her claim to the BIA. "A court may review a final order of removal only if– (1) the alien has exhausted all administrative remedies available to the alien as of right[.]" INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).

> Although an alien's due process challenge generally does not require exhaustion (the BIA lacks authority to review constitutional challenges), the alien must raise correctable procedural errors to the BIA. "[O]nly claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal." *Ramani v. Ashcroft,* 378 F.3d 554, 559 (6th Cir. 2004); *accord* 8 U.S.C. § 1252(d)(1) (providing that federal courts cannot exercise jurisdiction over an alien removal appeal where the alien has failed to exhaust all administrative remedies). Because Mr. Sterkaj failed to exhaust administrative remedies for his due process claim, we are precluded from reviewing it.

*Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Hu did not present her due process claim in her brief before the BIA. Her claim is therefore procedurally defaulted. *Lin v. Holder*, ----F.3d----, 2009 WL 1323443, at * 6 (6th Cir. 2009). The Court will nevertheless examine the merits of Hu's claim as an alternative basis for our decision.

The Government next argues that this Court lacks jurisdiction because Hu's allegations do not establish a colorable constitutional claim, but rather constitute a challenge to the IJ's discretionary weighing of the evidence, which is not reviewable.

This Court lacks jurisdiction to review the discretionary denial of an application for cancellation of removal. INA § 242(a)(2)(B)(i), 8 U.S.C. § 1252(a)(2)(B)(i); *Aburto-Rocha v. Mukasey*, 535 F.3d 500, 502 (6th Cir. 2008). The Court retains jurisdiction, however, to address colorable constitutional claims and questions of law arising from a removal proceeding. INA § 242(a)(2)(D), 8. U.S.C. § 1252(a)(2)(D); *Aburto-Rocha*, 535 F.3d at 502; *Dorado v. Gonzales*, 202 F. App'x 898, 900 (6th Cir. 2006). To come within our jurisdiction, a petitioner need establish only a "colorable" constitutional question. *See Dorado*, 202 F. App'x at 900. "'To be colorable . . . the alleged violation need not be substantial, but the claim must have some possible validity.'" *Hermez v. Gonzales*, 227 F. App'x 441, 444 (6th Cir. 2007) (quoting *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005)). A claim is not colorable if it is immaterial and asserted only to support jurisdiction, or if it is utterly insubstantial and frivolous. *Farraj v. Holder*, No. 08-3218,

2009 WL 596108, at *3 (6th Cir. Mar. 9, 2009) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 513 n.10 (2006)). "'[A] petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb.'" *Id.* (quoting *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001)).

"'Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing.'" *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (quoting *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001)). To constitute fundamental unfairness, a defect in the proceeding "must have been such as might have led to a denial of justice." *Huicochea-Gomez*, 237 F.3d at 699. Hence, a petitioner must show prejudice in order to establish a denial of due process in an immigration proceeding. *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). At its core, due process demands a neutral judge. *Hassan*, 403 F.3d at 436. A violation of due process occurs when an IJ relinquishes his role as unbiased fact-finder and instead acts as a partisan adjudicator. *Id*.

Hu argues that the IJ violated her due process rights when he allegedly failed to consider her son's language barrier in denying her application. She maintains this resulted from the IJ abandoning his role as a neutral fact finder after Hu revealed that she and her husband had $110,000 in a savings account which Hu did not disclose in her sworn application for cancellation of removal. In this regard, Hu refers to the IJ's exclamation,

"$110,000. Remarkable," his admission in his oral decision that he was "floored" by Hu's revelation, as well as his quip about the poorly running chicken farm. Hu also contends that other remarks the IJ made during the hearing and in his oral decision support her assertion of bias. For example, at one point the IJ told Hu, "Ma'am, I want you to face reality and start [answering] my questions straight." Lastly, Hu argues that she has demonstrated prejudice because her son's inability to speak Chinese well is crucial to the hardship determination.

While Hu's due process claim may not be substantial, we find that it is colorable. As the Government suggests, Hu's due process claim is tied to the IJ's weighing of the evidence. But Hu goes beyond the mere weighing of evidence and asserts the proceeding was infected with bias. The Court cannot say that Hu's due process claim was contrived solely to defeat the jurisdictional barrier Congress has put in place to prevent review of removal decisions. Nor can it fairly be said that her due process claim is wholly insubstantial and frivolous. Consequently, we have jurisdiction to review Hu's constitutional claim under INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D).

We nonetheless conclude that Hu's due process claim lacks merit. The IJ evinced surprise at Hu's revelation that she and her husband had $110,000 in a savings account. But this was a natural reaction given that such a large sum was not disclosed on Hu's sworn application, which required her to disclose her assets. There is no indication in the record that this expression of surprise blossomed into an abandonment of neutrality. At other times

during the hearing, the IJ appeared to be frustrated with Hu. This too is hardly surprising since Hu interrupted Jason's testimony on at least three occasions and gave non-responsive answers to some of the IJ's questions. The IJ's otherwise unremarkable expressions of frustration in response do not equate to bias. Furthermore, as the finder of fact, the IJ was required to assess the credibility of the witnesses who testified before him and to determine what weight their testimony deserved. The IJ's apparent skepticism concerning Jason's alleged inability to speak Chinese falls within the realm of the IJ's role as factfinder, and does not, in this instance, constitute a denial of due process.

In sum, the IJ's responses and comments do not, in this case, establish a lack of neutrality. *See Pepaj v. Mukasey*, 307 F. App'x 891, 897 (6th Cir. 2009) (A few sarcastic comments by the IJ do not establish bias that would offend due process.). Viewed in the context of the entire record, the evidence of purported bias falls considerably short of a showing that the IJ abandoned his role as a neutral decision maker. Indeed, before the IJ issued his oral decision, he stated that he was "very concerned" about how Jason would be treated in China, and that his focus was, as it should have been, on the purported hardship Jason would suffer. (JA 165-66). We conclude that Hu has failed to demonstrate bias.

## V. DISPOSITION

For the foregoing reasons, we find that review of Hu's due process claim is barred because she failed to present it to the BIA. In any event, her claim fails on the merits. We therefore **AFFIRM** the BIA's order.