NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0614n.06

Case No. 16-4688

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Nov 08, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| GULNARA GAFUROVA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| JEFFERSON B. SESSIONS III, Attorney | ) | |
| General, | ) | |
| | ) | |
| Respondent. | | |

BEFORE: CLAY, COOK, and WHITE, Circuit Judges.

CLAY, Circuit Judge. Petitioner Gulnara Gafurova ("Gafurova"), a native of the former Soviet Union and a citizen of Uzbekistan, petitions for review of the decisions of the Board of Immigration Appeals ("BIA") and the immigration judge ("IJ") denying her motion to change venue and barring her from filing a second asylum application. On appeal, Gafurova argues that the BIA and IJ erred when they found Gafurova had failed to show changed circumstances materially affecting her eligibility for asylum and when they denied her motion to change venue. She also argues that the BIA and IJ violated due process by failing to specify the burden of proof for establishing changed circumstances and that the IJ improperly prejudged or was biased against her. For the reasons set forth below, we **DENY** the petition.

**BACKGROUND**

Gafurova is a native of the former Soviet Union and a citizen of Uzbekistan. She was admitted to the United States on June 24, 2003 as a non-immigrant visitor with authorization to remain in the U.S. until December 21, 2003. She remained in the U.S. beyond this date without authorization. On June 21, 2004, Gafurova filed an Application for Asylum and for Withholding of Removal with the U.S. Citizenship and Immigration Services ("USCIS"). USCIS referred her application to immigration court.

On July 29, 2004, the Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Gafurova with removability pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act. On September 24, 2004, Gafurova appeared in immigration court and admitted the allegations in the NTA and conceded the charge of removability. Gafurova sought asylum, withholding of removal, and protection under the Convention Against Torture. She indicated that she would be relying on the same application she had previously filed with USCIS.

On May 4, 2005, the IJ denied Gafurova's application and ordered her removal. Gafurova filed an appeal with the BIA. On January 12, 2007, the BIA sustained the appeal and remanded her case to the IJ. On September 17, 2008, the IJ denied Gafurova's application for asylum and withholding of removal and found the application frivolous. Gafurova filed an appeal. On October 26, 2010, the Board denied Gafurova's appeal, but reversed the frivolous finding.

On January 21, 2011, Gafurova filed a motion to reopen with the BIA to pursue an adjustment of status based on a pending I-130 visa petition filed on her behalf by her husband. On May 12, 2011, the BIA initially denied her motion because Gafurova had not submitted

- 2 -

sufficient evidence that the marriage was bona fide. Gafurova filed a motion to reconsider with the BIA. On June 23, 2011, the BIA granted the motion, vacated its May 12, 2011 decision, reopened Gafurova's proceedings, and remanded her case to the IJ.

On November 1, 2011, Gafurova filed an application for adjustment of status. On February 6, 2014, the IJ denied her application because she had filed a frivolous asylum application and was statutorily ineligible for relief. Gafurova filed an appeal. On November 9, 2015, the BIA concluded the IJ was without the authority to revisit the issue of whether the application was frivolous and remanded Gafurova's case to the IJ to reconsider whether any additional bars to relief applied to her case.

On November 30, 2015, the IJ instructed Gafurova and DHS to provide additional information regarding her application to adjust status. On December 29, 2015, DHS submitted evidence showing that Gafurova's I-130 petition had been revoked by USCIS, meaning that Gafurova was no longer eligible to seek an adjustment of status.

On January 15, 2016, Gafurova filed a motion to change venue to New York so that she could submit a second asylum application. Gafurova alleged two bases for her second asylum application: (1) she converted to Christianity in 2011 and (2) she would be viewed as a traitor in Uzbekistan because information is publicly available that she filed for asylum in the U.S.

On January 27, 2016, the IJ denied Gafurova's motion to change venue, found her statutorily barred from filing a second asylum application, and ordered her removed to Uzbekistan. With regard to her application, the IJ explained that because Gafurova had previously applied for asylum and that application had been denied, she was barred from filing a second application unless she could demonstrate "the existence of changed circumstances that materially affect her eligibility for asylum." The IJ determined that Gafurova had "not

established that she had converted to Christianity," which meant her conversion did not qualify as a changed circumstance that affected her eligibility for asylum. The IJ also determined that "there is no evidence that arresting people who applied for asylum is a common practice in Uzbekistan." Thus, the IJ concluded that Gafurova had not established a change in circumstances materially affecting her eligibility for asylum and she was barred from filing a second asylum application. With regard to her motion to change venue, the IJ determined that Gafurova failed to show "good cause" for a change of venue, especially as she would be unable to file a second asylum application.

On February 16, 2016, Gafurova filed an appeal with the BIA. In her Memorandum in Support of Appeal, Gafurova argued that she presented sufficient evidence to prove changed circumstances and that the IJ should have held a hearing to allow her to present additional evidence. She also argued that the IJ prematurely found Gafurova to lack credibility.

On November 10, 2016, the BIA dismissed Gafurova's appeal. The BIA affirmed the IJ's order and largely adopted the IJ's reasoning. The BIA agreed that the evidence Gafurova presented did not show changed circumstances materially affecting her eligibility for asylum. The BIA also rejected Gafurova's claim that the IJ should have held a hearing on her motion and allowed her to present additional evidence. The BIA explained that Gafurova "had the burden to produce evidence to fully support her request at the time it was filed." Finally, the BIA concluded the IJ appropriately considered Gafurova's lack of credibility. Consequently, the BIA dismissed Gafurova's appeal.

On December 7, 2016, Gafurova timely filed a petition for review in this Court.

**DISCUSSION**

## I.      Burden of Proof and Due Process

Gafurova argues that the IJ failed to "specify what burden of proof she held Petitioner to for 'establishing' changed country circumstances." She argues the IJ and BIA should have stated "to what standard" Gafurova was held—"Clear and convincing? Clear convincing and unequivocal? Preponderance? Beyond a reasonable doubt?" Gafurova does not state in her brief which standard the BIA and IJ should have applied. Gafurova asserts that the failure to identify this standard is a "Due Process legal error requiring remand to the IJ in the first instance."

### A.      Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the Court] review[s] the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009) (citing *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007)). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel v. Gonzales*, 470 F.3d 216, 218 (6th Cir. 2006)). This Court reviews questions of law de novo. *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006) (citing *Ali v. Ashcroft*, 366 F.3d 407, 409 (6th Cir. 2004)).

"We review de novo alleged due process violations in immigration proceedings." *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007).

### B.      Analysis

Gafurova did not preserve this argument because she did not raise it before the BIA. *Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) ("[W]e hold that only claims properly

presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal."). Contrary to Gafurova's suggestion, the BIA did not raise sua sponte the issue of whether the IJ erred or violated due process by failing to identify the burden of proof. *See Khalili*, 557 F.3d at 435 ("[W]e follow the majority of circuit courts in finding appellate jurisdiction to review issues raised sua sponte by the BIA."). Instead, it only considered whether the IJ properly found that Gafurova failed to meet her burden of demonstrating changed circumstances. These are two different inquiries. Because neither Gafurova nor the BIA raised the issue of a failure to identify the burden, the issue was not preserved. Therefore, we lack jurisdiction to review this claim.

Even if Gafurova's claim is properly preserved, it should be rejected because the IJ and BIA did identify the burden of proof. Because Gafurova had previously applied for asylum, the IJ noted that "she is barred from filing a second asylum application unless she demonstrates the existence of changed circumstances that materially affect her eligibility for asylum." Similarly, the BIA said "[f]or the respondent to submit a second asylum application, she must demonstrate 'the existence of changed circumstances which materially affect [her] eligibility for asylum . . . .'" Under the statute, because Gafurova had previously filed for asylum and that application had been denied, Gafurova had the burden of "demonstrat[ing] to the satisfaction of the [immigration judge] . . . the existence of changed circumstances which materially affect[ed] [her] eligibility for asylum." 8 U.S.C. § 1158(a)(2)(C)–(D).

Both the IJ and BIA identified that Gafurova had the burden and identified what she had to prove under the statute. Gafurova's situation is not comparable to the cases she cites. For example, in *Tran v. Gonzales*, the BIA opinion did not reference any standard of review and this Court was unsure from the analysis which standard the BIA applied. 447 F.3d 937, 944 (6th Cir.

2006). In *Ward v. Holder*, the IJ "used the wrong degree of proof and allocated it to the wrong party." 733 F.3d 601, 608 (6th Cir. 2013). Consequently, even if we were able to review this claim, we would reject it because the IJ and BIA both correctly identified Gafurova's burden of proof.

## II.     Improper Prejudgment or Bias

Gafurova argues that the IJ's decisions reflect bias against her. This appears to be because the IJ found that she lacked credibility and pointed to a previous adverse credibility finding. As a result, she argues the case should be remanded to a new IJ.

### A.     Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the Court] review[s] the BIA's decision as the final agency determination." *Khalili*, 557 F.3d at 435 (citing *Morgan*, 507 F.3d at 1057). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel*, 470 F.3d at 218). This Court reviews questions of law de novo. *Ramaj*, 466 F.3d at 527 (citing *Ali*, 366 F.3d at 409).

"We review de novo alleged due process violations in immigration proceedings." *Garza-Moreno*, 489 F.3d at 241.

### B.     Analysis

"Fifth Amendment guarantees of due process extend to aliens in [immigration] proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. I.N.S.*, 237 F.3d 696, 699 (6th Cir. 2001). "An alien must establish both 'error and substantial prejudice' to 'prevail on a due process challenge to [immigration] proceedings.'" *Garza-Moreno*, 489 F.3d at 241

(quoting *Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005)).  Substantial prejudice requires a "showing the alleged violation affected the outcome of the proceeding."  *Lin v. Holder*, 565 F.3d 971, 979 (6th Cir. 2009).

"At its core, due process demands a neutral judge."  *Aichai Hu v. Holder*, 335 F. App'x 510, 515 (6th Cir. 2009) (citing *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005)). "A violation of due process occurs when an IJ relinquishes his role as unbiased fact-finder and instead acts as a partisan adjudicator." *Id.*

In *Hassan*, the petitioner cited to a number of comments made by the IJ that "reveal[ed] a prejudgment in the case."  403 F.3d at 436.  These include that petitioner was "completely unbelievable" and that his testimony was "inherently incredible," "internally inconsistent," and "nonsensical."  *Id.*  The Court found that, while the language might have been "brusque," it did not reveal an underlying bias and the petitioner was given a "full and fair opportunity to present his case for relief in front of a neutral arbiter."  *Id.* at 437.  This Court noted that the petitioner "presented testimony that was contradictory and inconsistent, and as a result, the IJ denied him relief."  *Id.*  In *Aichai Hu*, the petitioner claimed the IJ was biased as shown in the IJ's surprise at certain factual revelations, frustration with the petitioner, and skepticism regarding certain factual claims.  335 F. App'x at 515.  This Court found that "the evidence of purported bias falls considerably short of a showing that the IJ abandoned his role as a neutral decision maker."  *Id.* at 516.  We noted that there was "no indication in the record that [the] expression of surprise blossomed into an abandonment of neutrality," that "unremarkable expressions of frustration . . . do not equate to bias," and that "[t]he IJ's apparent skepticism . . . falls within the realm of the IJ's role as factfinder, and does not, in this instance, constitute a denial of due process."  *Id.* at 515.  Furthermore, this Court has held that the BIA "may consider prior adverse credibility

findings in future proceedings when weighing evidence." *Mohamed v. Holder*, 542 F. App'x 446, 453 (6th Cir. 2013) (citing *Zhang v. Mukasey*, 543 F.3d 851, 855 (6th Cir. 2008)).

In its decision, the IJ noted that Gafurova "has a history of lying under oath, submitting fraudulent documents and ultimately admitted her first asylum application contained fabricated information." Consequently, the IJ determined Gafurova was not credible and gave her affidavit "little weight." The BIA found that the IJ did not inappropriately prejudge Gafurova's credibility. It found that it was reasonable to consider her lack of credibility because it had been a "continuous issue [in] her proceedings, and the initial adverse credibility finding by the Immigration Judge has been upheld by this Board and the federal court of appeals." Further, the BIA found that the "crux" of the IJ's decision to reject Gafurova's claim was that she did not submit sufficient documentary evidence showing changed circumstances materially affecting her eligibility for relief.

Both the BIA and the IJ were permitted to consider Gafurova's prior adverse credibility findings when weighing evidence in her current proceedings. As noted by the BIA, under the circumstances, it was reasonable to take into account Gafurova's lack of credibility when evaluating her new claims because Gafurova had a history of providing false statements under oath and of submitting fraudulent documents. Gafurova has not shown that the IJ's credibility determination reflected an underlying bias against her. She has failed to demonstrate the IJ abandoned her role as a neutral decision maker.

### III. Changed Circumstances Materially Affecting Gafurova's Eligibility for Asylum

Gafurova argues that the determination that she failed to prove changed circumstances is an abuse of discretion because the "IJ and Board misinterpreted alerts from reputable human rights organizations," and because "[t]he sources that Gafurova used to support her claim of

material change of country conditions were particularly strong and reliable." She also argues that the "IJ [and] the BIA overlooked a huge amount of credible documents" and they "erroneously deferred to a corrupt Uzbek government with a credible record of persecuting former asylees rather than reputable Human Rights NGO's."

## A.    Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the Court] review[s] the BIA's decision as the final agency determination." *Khalili*, 557 F.3d at 435 (citing *Morgan*, 507 F.3d at 1057). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel*, 470 F.3d at 218).

This Court reviews questions of law de novo. *Ramaj*, 466 F.3d at 527 (citing *Ali*, 366 F.3d at 409). "This Court reviews both the immigration judge's and the BIA's factual findings under the substantial-evidence standard." *Khalili*, 557 F.3d at 435 (citing *Hamida v. Gonzales*, 478 F.3d 734, 736 (6th Cir. 2007)). Under this standard, it is not enough for the Court to merely disagree with the BIA and IJ's factual findings. *Id.* Rather, the BIA and IJ's factual findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010) (quoting 8 U.S.C. § 1252(b)(4)(B)).

## B.    Analysis

Before the Court may address Gafurova's claim, we must first ascertain whether her claim is reviewable at all. Respondent argues that "the Court lacks jurisdiction to review Ms. Gafurova's arguments concerning the agency's decision that she failed to demonstrate changed circumstances materially affecting her eligibility for asylum." In support, Respondent

cites 8 U.S.C. § 1158(a)(3), which provides, "No court shall have jurisdiction to review any determination of the Attorney General under paragraph (2) [relating to the one-year filing deadline and successive asylum applications]."

This Court has held that review of the denial of a subsequent or untimely asylum application is barred "when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006) (finding that the Court did not have jurisdiction to review an appeal of the denial of asylum because the claim was based on the IJ's incorrect application of the "changed circumstances" provision); *see also El-Moussa v. Holder*, 569 F.3d 250, 254 (6th Cir. 2009) (finding that the Court did not have jurisdiction to review the IJ's decision that the asylum application "was untimely and that no changed circumstances materially affecting her application have occurred"). A claim that changed circumstances materially affecting eligibility for asylum exist is a factual question. *El-Moussa*, 569 F.3d at 255; *Almuhtaseb*, 453 F.3d at 748.

Gafurova responds that the jurisdictional bar does not apply to this situation because it does not involve review of the denial of an asylum application. Gafurova contends that because she has not yet filed a second asylum application, the limitation on jurisdiction does not apply here.

We agree with Gafurova. The cases applying the jurisdictional bar raised by Respondent involve the review of a denial of an asylum application. This makes sense as § 1158 deals with applications for asylum. Here, Gafurova did not actually file a second asylum application. Instead, in a motion to change venue, Gafurova informed the IJ that she intended to submit a second application for political asylum and argued that New York is the appropriate court to

consider that new application. To her motion, she attached a "proposed" application for political asylum, "as required by the regulations."

In denying the motion to change venue, the BIA and IJ decided that Gafurova would be barred from filing a second petition. They did not deny Gafurova's application for asylum. Because this case involves the review of a denial of a motion to change venue and not a denial of an asylum application, we have jurisdiction to review Gafurova's claim.

We review the denial of a motion to change venue[1] under an abuse of discretion standard. *Dugboe v. Holder*, 644 F.3d 462, 471 (6th Cir. 2011). An abuse of discretion exists when the denial is "made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006) (quoting *Balani v. I.N.S.*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

In her motion to change venue, Gafurova asserted that she intended to file a second application for asylum in the new court. In deciding her motion, the IJ considered whether Gafurova would be able to file that second application. Because Gafurova had previously applied for asylum and that application had been denied, she was barred from filing a second application unless she could demonstrate "the existence of changed circumstances that materially affect her eligibility for asylum." In support of changed circumstances, Gafurova first claimed she feared persecution because of her conversion to Christianity. The IJ determined that Gafurova had "not established that she had converted to Christianity," which meant her conversion did not qualify as a changed circumstance that affected her ability for asylum. In

---

[1] Gafurova erroneously argues that our review should be of a motion to reopen her case, under an abuse of discretion standard. However, Gafurova did not file a motion to reopen her case, but a motion to change venue.

making this determination, the IJ noted that Gafurova had previously falsely claimed to be Christian in her first application, that she never mentioned this conversion in her 2013 hearing, and that the only evidence she supplied to support this contention was an affidavit, which the IJ gave no weight to because she "has a history of lying under oath, submitting fraudulent documents and ultimately admitted her first asylum application contained fabricated information."

Gafurova then claimed that she feared persecution because she sought asylum in the U.S. and this information is available online. The IJ noted that the Second Circuit's decision regarding the denial of her first asylum application is available online, but that the decision did not discuss details of her application other than that it was false. The IJ also determined that "there is no evidence that arresting people who applied for asylum is a common practice in Uzbekistan." The IJ distinguished cases that Gafurova pointed to because they all involved individuals who were facing criminal charges in Uzbekistan because they were involved in alleged terrorist organizations. Thus, the IJ concluded that Gafurova had not established a change in circumstances materially affecting her eligibility for asylum. Consequently, the IJ determined that Gafurova was barred from filing a second asylum application.

On appeal, the BIA agreed that the evidence Gafurova presented did not show changed circumstances materially affecting her eligibility for asylum. The BIA noted that the evidence did show "corruption and mistreatment of prisoners and political opponents in Uzbekistan," but did not "adequately establish that [Gafurova] would be included in such a group upon return to Uzbekistan, or otherwise set forth changed circumstances which are material to [her] eligibility for asylum.

Both the BIA and IJ considered the reasons and evidence cited by Gafurova. Both determined that her evidence failed to support a finding of changed circumstances. They properly considered her credibility. The IJ and BIA considered Gafurova's two arguments and the evidence she cited in support, but determined she had not met her burden and provided a rational explanation for why she had not. Gafurova has not shown that the determination was an abuse of discretion. Accordingly, we reject this claim.

## IV. Denial of Gafurova's Motion to Change Venue

Gafurova essentially argues that because the IJ was wrong for finding she did not demonstrate changed circumstances materially affecting her eligibility for asylum, the IJ was also wrong to deny her motion to change venue. Gafurova argues that the motion should be granted based on "administrative convenience, expeditious treatment of the case, location of the witnesses, and [the] cost of transporting witnesses or evidence to a new location" because she and the expert she wishes to have testify in an evidentiary hearing reside in New York.

### A. Standard of Review

"Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision, [the Court reviews] the BIA's decision as the final agency determination." *Khalili*, 557 F.3d at 435 (citing *Morgan*, 507 F.3d at 1057). "To the extent the BIA adopted the immigration judge's reasoning, however, this Court also reviews the immigration judge's decision." *Id.* (citing *Patel*, 470 F.3d at 218).

This Court reviews questions of law de novo. *Ramaj*, 466 F.3d at 527 (citing *Ali*, 366 F.3d at 409). "This Court reviews both the immigration judge's and the BIA's factual findings under the substantial-evidence standard." *Id.* (citing *Hamida*, 478 F.3d at 736). Under this standard, it is not enough for the Court to merely disagree with the BIA and IJ's factual

findings. *Id.* Rather, the BIA and IJ's factual findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Pablo-Sanchez*, 600 F.3d at 594 (quoting 8 U.S.C. § 1252(b)(4)(B)).

This Court reviews the denial of a motion to change venue for abuse of discretion. *Dugboe*, 644 F.3d at 471. An abuse of discretion exists when the denial is made "without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis such as invidious discrimination." *Abu-Khaliel*, 436 F.3d at 634 (quoting *Balani*, 669 F.2d at 1161).

**B.  Analysis**

Briefly, Respondent challenges this claim as "waived and abandoned" for failing to "meaningfully challenge[] the bases of the Immigration Judge's decision in her opening brief to this court." Gafurova did not waive the argument. In *United States v. Johnson*, this Court noted that an appellant "abandons all issues not raised and argued in its initial brief on appeal." 440 F.3d 832, 845–46 (6th Cir. 2006) (quoting *United States v. Still*, 102 F.3d 118, 122 n.7 (5th Cir. 1996)). This Court continued that "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *Id*. at 846 (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)). In *Johnson* itself, the petitioner referenced an issue only in a footnote and failed to develop the argument elsewhere. *Id.* In this case, Gafurova includes a challenge to the denial of her motion to change venue in one argument heading and in various places in her opening brief. Thus, Gafurova did not waive further argument regarding the denial of her motion to change venue.

As explained by the IJ, an immigration judge may change venue for "good cause." 8 C.F.R. § 1003.20(b). "In determining whether good cause to change venue exists, an

immigration judge should consider all relevant factors including administrative convenience, expeditious treatment of the case, location of witnesses, and cost of transporting witnesses or evidence to a new location." *See Matter of Rahman*, 20 I. & N. Dec. 480, 483 (BIA 1992).

In this case, the IJ determined that Gafurova failed to show "good cause" for a change of venue. The IJ noted that the basis for the motion was to file a second asylum application and have the application adjudicated in a different location. The IJ reviewed whether Gafurova would be able to meet the statutory requirements for filing a second application and found that she did not. The IJ explained that because Gafurova was barred from filing a second asylum application, there was no need for a further individual hearing. The IJ further explained that Gafurova "ha[d] been in removal proceedings for over ten years and ha[d] had at least three individual hearings on two separate applications for relief, both of which [had been] denied" and she had no application pending. The IJ concluded "the issue of expeditious treatment of the case weigh[ed] heavily against a change of venue as there [were] no unresolved issues in the case." On appeal, the BIA said "the respondent's request for a change of venue was properly denied."

In *Lumaj v. Holder*, this Court held that the denial of a motion to change venue was not an abuse of discretion when the petitioner "had already been granted one change of venue, and the case had been pending for several years." 388 F. App'x 469, 473 (6th Cir. 2010). Similarly, in *Pergjoni v. Holder*, this Court held the IJ did not abuse her discretion in denying a motion to change venue when the only reason for the change was to consolidate cases, but the consolidation was "not necessarily warranted or even guaranteed." 311 F. App'x 892, 894–95 (6th Cir. 2009). Additionally, the IJ had already granted one change of venue and the case had been pending for three years at the time of the petitioner's motion. *Id.*

Here, because the IJ found there were no further issues to be resolved and Gafurova had already been in removal proceedings for more than ten years and had filed multiple applications for relief which had been denied, the IJ did not abuse her discretion by determining that Gafurova failed to show "good cause" and by denying her motion to change venue.

## CONCLUSION

For the foregoing reasons, we **DENY** Gafurova's petition for review.